Good morning. My name is Andrea Lynn de Castillo. I am the trial counsel, Andrea Lynn Matheson, from this case. I recently was married. I would like to reserve about three to four minutes for rebuttal. This morning I would like to request of this panel that it be intentional by curing the infection of unfairness which permeated the district court case trial, depriving Appellant Ibarra-Ramirez of the due process to which he was entitled under the Constitution. The cumulative misconduct of the assigned United States attorney, who is not going to be arguing before you this morning, resulted in this perversion of due process. The district court refused to impose sanctions on the assigned United States attorney after the court concluded that any acts or omissions were not purposeful or in bad faith. These instances by the United States attorney included, number one, a late disclosure, nine months late, of a statement by Mr. Ibarra-Ramirez which became a very important part of this motion. Number two, representing to defense counsel that no agent notes existed. And once the agent note, the agent officer McDowell was testifying at the evidentiary hearing before the magistrate judge Estrada, and was testifying directly from his notes, at that point the United States attorney objected still to the defense receiving a copy of those notes. And that was ten months later, after the initial request for Rule 16 disclosure and Brady material be disclosed. Fourth, objecting to the drug purity, which was an uncontested 11 percent of the methamphetamine, when the stipulation between myself and the United States attorney spoke to the type and the amount of methamphetamine. And I will highlight something about that stipulation in just a moment. Number five, filing two motions to the court after a time-certain deadline of a noon deadline imposed by the court, and then misrepresenting the reasons of the delay to the court. Later, after the defense called the United States attorney on those reasons, that is when the United States attorney went to actually investigate the real reason about why there was a late filing. Number six, failing to disclose the most crucial piece of evidence used by the government, which was a copy of the Mexican registration card, which was admitted by the district court as an adoptive admission, an adoptive statement of appellant. This document was provided to defense counsel nine days prior to trial, more than a year after the initial request for disclosure, and then more than two and a half months after a specific request itemized in a ten-paragraph document to the United States attorney, specifically asking for tangible objects, statements, and anything and everything that we could think of. And finally, using and arguing to the jury the very ‑‑ the nature of the drugs, the methamphetamine and the cocaine, as very valuable drugs where a lot of money was at stake when the United States attorney himself knew about the 11 percent purity. Your Honors, the record is clear, even in the transcript, where I, as trial counsel for Mr. Ibarra, acknowledged that Mr. Albert said that his failings or ‑‑ or tardiness in disclosing some of the things were not intentional and they were not in bad faith. But I submit to Your Honor, Your Honors, that due process must be intentional. Sotomayor, I'm a little confused here. You were trial counsel? I'm sorry? You were trial counsel? Yes, Your Honor. Was the purity left out of the stipulation? Specifically, the 11 percent was. And you'll see in the record, Your Honor, that I was given authority by my client to stipulate to the type and quantity, and we contemplated in our conversations You're telling us that you goofed? Oh, yes. I sure did. I goofed so much, Your Honor, that I even at that point told the court that my client did not authorize me to have that stipulation without that, and I actually moved for ineffective assent, asked to withdraw, and then my client asked for new counsel. However, may I just couch this, Your Honor, and this was ‑‑ this was my error, but I was in the midst ‑‑ the stipulation that I signed was just days before we had this suppression hearing, this full-blown suppression hearing on this false confession that was made to a Border Patrol agent. So, honestly, that was done ‑‑ I understand, but I don't want to go into all of that. Sure. But the argument is that the government had an expert that it could have called to testify as to what the meaning of the purity is. My understanding, and I'm certainly not an expert, that none of this stuff that's on the street is 100% pure, and I would think that 50% purity is really high. Is ‑‑ what is ‑‑ what ‑‑ what would you make out of the 10% purity? Well, Your Honor, and that was the complaint of the government that I had waived ‑‑ well, first of all, the ‑‑ It's kind of legitimate, isn't it? It is legitimate in the sense that we were trying to save time and resources for the court when we stipulated to the findings of what was a lab report, but what was extracted from the lab report was everything except for the purity. But that is where in the discretion of the court to just allow the defense to draw any kind of reasonable, even if it's ‑‑ and I believe there was a case that I found, in fact, that said even if the evidence that is calculated to cause the jury to doubt should not be precluded because it is speculative and fantastic, the fact is that there was an uncontested purity level that I was just simply not allowed to bring out when it was ‑‑ it really was relevant to the type and quantity of the drug. And so what happened was it was an error on my part, but it was within ‑‑ What are the consequences of this? What's the upshot? Did your client get a sentence that was too high because the purity level wasn't introduced? I thought the purity level was introduced and your client was sentenced according to the purity level. The purity level was not introduced to the jury. It was brought up obviously. How would it have changed the jury? It would have changed the jury because it would have allowed the theory of the defense that Mr. Ibarra Ramirez was a decoy. As you'll see from the record, the drugs were very elaborately secreted in this vehicle. And this vehicle was a vehicle that he had obtained the day before as a ‑‑ well, actually it had obtained the vehicle that day, but the day before he had provided his voter registration card and his visa and his identification to get the vehicle registered and his name by his employer. But his theory was that as he was coming through the checkpoint that he was a decoy for somebody else who was coming through the checkpoint at the same time and that the idea was that they were going to sacrifice him, take him to secondary and that would let somebody else slip through. Is that the theory? Yes, except it wouldn't have been presented in that way because obviously that would have meant that he was a knowing decoy. The defense would have been that he was an unknowing decoy because we actually had on the record ‑‑ Go ahead. Yes. Go ahead. We explained about his relationship to the employer, which is Eduardo, who had hired him to go across the border back and forth and collect money for him. Given the purity, what was the street value of this meth? That never came out. That never came out. You were able to argue your theory, though, weren't you? No, I was not. You didn't argue that he was a decoy? I was not able to. Without ‑‑ Without? Without. I'm sorry? Without the purity you're saying? You know, it just seems to me that if there are a lot of stuff that isn't here and that if you were ineffective in failing to get that purity, it should be handled on habeas where we could see what the street value was, all of the stuff that you were precluded from arguing. We don't have any of that here. So far as we know, the purity is ‑‑ it's quite a valuable load. It's a lot of stuff and it's more than 10% pure. I guess that's more pure than wine is with alcohol, so I ‑‑ It's more than a detectable amount. Well, Your Honor, and I understand ‑‑ Could you have tested the meth yourself? Could you have asked to have it tested? There was no need to have the meth tested because we did not contest the purity. I did request after the conviction ‑‑ You wanted to get this theory in, notwithstanding the stipulation. Couldn't you have asked to have it tested so that you could have then introduced the purity level on your own? Well, in fact, if I had been given the opportunity, the purity level was excluded right before trial. If I had not messed up with the stipulation ‑‑ But you didn't stipulate that you couldn't introduce purity. You just couldn't have introduced it out of the lab report that the government had, right? Right. And I ‑‑ the timing, I did ask for a continuance, Your Honor, and I was not able to obtain an expert witness to be able to get the purity because I was not able to ask ‑‑ The only witness that the government put on was the secondary officer the government did not put on the case agent, which goes to the sufficiency of the evidence. There was the secondary officer who testified, and the basis of the conviction, I submit, was the fact that he was the owner and the sole occupant of this vehicle, and then obviously that the registration date of this adoptive admission and the registration document, the jury was able to infer that Mr. Ibarra Ramirez was lying with regard to when he acquired the vehicle. But what the common thread is through all of this, and unfortunately the issues are incredibly intertwined, which makes it difficult to just kind of parse issue by issue, is that the way in which disclosure and representations were made by the United States attorney, it was a cumulative effect of violating the due process in this case. I'm still having a little trouble why you couldn't argue your theory. Drugs are cut all the time. You don't know how much it is, and when you buy it, you buy it, and you have either a good deal or a bad deal. If it were 10 percent or 11 percent or 30 percent, you could still argue your decoy theory. I was not allowed to argue the decoy theory. You asked the judge, can I argue this, and the judge said you can't argue that in your closing? The judge said that based on, I was not able to connect the low drug purity to the decoy. All I could do with the evidence that I was given was. You could still argue your theory. You just have to, you couldn't argue the low or the 11 percent or anything else. It's the scienter of it. Right. I would like to reserve a short time for rebuttal, please. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson. On behalf of the United States, the district court's exclusion of the evidence regarding purity was a straightforward application of the fact that the defendant basically did not have the evidence to demonstrate why the 11 percent figure was relevant. And from the government's standpoint, the defendant had entered into a stipulation saying what the type and weight of the drugs were.  the government did not have a DEA chemist available for trial. Do you agree that the purity was 11 percent or was that? Yes. That was in the DEA report, actually. The DEA's chemist report, they test the purity of meth because of the way the sentencing guidelines are written. So we're talking about only meth. We're not talking about the cocaine. Right. As a matter of fact, the DEA does not test the purity of cocaine. Okay. So, all right. The meth, and the allegation is that meth, that there was a detectable amount. So even if there was 1 percent, it would have been illegal. Right. And 10 percent, in the absence of, for the defendant's theory of this being a setup to work, there has to be evidence suggesting that this is a basically low value, low that the defendant has, that the drug organization would be willing to sacrifice. In the absence of that kind of information, the purity is just a figure out there that nobody knows what it means. In other words, to the extent a decoy defense gets raised, typically in Tucson, the scenario typically is you have a small load of marijuana that is easily found by the port officers, apparently as an attempt to divert their attention so another more valuable load can get through. I'm still a little confused here. Did they have the DEA report? Yes. Then how were they precluded from arguing the purity? Because there was nobody to testify as to what was in the DEA report because the chemists had been canceled because of the stipulation. Oh, that was the expert that you released. I see. Right. In other words, I'm trying to connect the dots here. The drugs were sent to a DEA lab. A chemist analyzed them. They determined they were meth and cocaine and determined that the purity of the meth was, I think it was 11.2 percent and did not test for the purity of the cocaine. And that was disclosed to defense counsel prior to trial. Prior to trial, the government and the defense entered into a stipulation that it was a certain weight of meth and a certain weight of cocaine, but no mention of purity. Since the government didn't see purity as an issue, that wasn't entered into. The government canceled the chemist. The chemist wasn't available for trial at the date and time of trial. This gets raised in a motion filed 6 o'clock prior to the day before trial. So this is kind of like a last-minute thing that comes up. It's addressed the morning of trial and the judge makes the ruling that it's basically the evidence isn't relevant because of the lack of the conditional foundation. And that was not an abuse of discretion on the district court's part. So they wanted to be able to argue that the 11 percent was not, was kind of a worthless purity level. And you were, your scientist or the fellow who did the report had been released and wasn't available in order to counter that. Correct. So that the jury would know what the real significance of it was. That is correct, Your Honor. So the court did not abuse its discretion under that scenario by excluding the purity of the drugs. As far as the disclosure issues, again, at this point the defendant is claiming that these are due process violations. The defendant didn't raise these issues with the court until well after most of them actually occurred. They were first raised orally right at the kind of beginning of trial or right before trial, excuse me, right before trial. They had already occurred in the past and been remedied in the past by the disclosure. So the court gave the defendant leave to file a written motion. The government responded and the court analyzed each and every allegation of disclosure and found that because of the way they were remedied and because of the lack of prejudice to the defendant, there was no need for sanctions. And most of these discovery things were actually kind of the type of stuff that is not infrequent. For example, the report of Officer Lynn that was disclosed late. The report of Officer McDowell that was disclosed on time says Officer Lynn's report is attached. Apparently, it didn't get attached to the copy the defendant had. Typically, that's resolved by the defense attorney calling the prosecutor and saying, hey, I didn't get the attachment to Officer McDowell's report. Could you get it for me? In any event, they got it before the motion to suppress. They were able to prevail on the motion to suppress with the magistrate judge, and the defendant's confession was not used to trial in any way, shape or form. In that scenario, there's no prejudice to the government from the late disclosure that the government admits shouldn't have occurred, but there was no prejudice to the defendant and it was remedied in time for the defendant to be able to deal with it. Same thing, Officer McDowell's notes were disclosed during the suppression hearing. The government submits that there's absolutely no possible misconduct with the prosecutor not being willing to modify the stipulation at that point in time. The stipulation had been entered into, the government is entitled to rely on it in determining what witnesses it had available. And again, with the late filed court document, again, the court found no prejudice. So in all of these things, it was not an abuse of discretion for not, for the court not to impose sanctions. Finally, on the disclosure of the registration document, again, that was referenced in the report that was disclosed at the beginning of the prosecution. The defendant filed a motion to eliminate, to preclude it, so clearly the defendant knew about it. And then, again, the fact that it doesn't get, the actual document doesn't get disclosed until about a week before trial, again, she knew about it, she filed a motion on it. Again, in that case, the district court found no problem. Unless the court has... I'm curious about the safety valve issue. As I understood the defendant's argument, she was, the argument is that the district court didn't explain or provide a basis for the safety valve issue. There was a... First offense, no gun, etc., etc., got right down to whether or not the defendant was forthright. And that's a significant issue in sentencing, I would think. It certainly is. And in this case, what the court found was, although the court expressly stated that it understood it had the discretion under Ninth Circuit law to apply safety valve, even though the defendant's denial of knowledge of the cocaine and meth was rejected by the jury. The judge said she understood she had that discretion. But she said, I'm not going to do that  she uses the phrase, first, she has no disagreement with the jury's finding. She found the defendant's testimony at the sentencing hearing was incomplete and implausible. So in that regard, the court did not abuse its discretion in not applying the safety valve. But in any event, the district court did use her discretion to vary downward under the sentencing, excuse me, to vary downward from the sentencing range of 188, which I think was 235 months, down to 120 months. So the court gave the defendant... Roberts, I just didn't see what was the sentencing range. The sentencing range was, and it's in footnote 15 on page 50 of the government's brief. Okay. It was 188 to 235 months. 28 to 235, and she gave him 120. Right. Okay. Unless the Court has any additional questions. Thank you very much. Mr. Castillo. I'd like to, um, direct our attention immediately to the registration card, which was the adoptive statement accepted as an adoptive statement. Um, Mr. Miskell explains that all of the disclosure problems had been remedied in the past,    of a disclosure of a disclosure of a disclosure of a disclosure of a disclosure of a disclosure of this, what has, what had been found to be a statement of Mr. Ibarra, um, was not remedied because it was given, uh, just over a week before trial. Um, and because I, um, the, the court found that, uh, or, or because there was a reference to a, uh, registration document in one of the initial reports, that in itself the court believed that was, uh, enough to alert the defense as to the nature of the document, but in that document it had the date of registration, um, which was, uh, also flipped around because of the dates of Mexico, um, how they register their documents. But there was, first of all, the prejudice does not, is not the relevant, uh, inquiry with regard to the, um, the way in which the disclosure was made, but I would submit that, that, uh, not given the opportunity to, um, investigate and show the nature in which how this registration document had been obtained, which can be obtained without the actual appellant going and signing anything of anything of that sort, that very registration date became the, uh, I, I would say the nail in the coffin for Mr. Ibarra-Ramirez because that's when the jury concluded that, uh, he obviously was lying and that was how he was trying to distance himself from the vehicle. Um, so I submit that the registration card nine days before trial in terms of giving it to the defense, all of the information contained therein further revealed after the conviction that this registration card was elaborately obtained by a third party as my investigator Gilbert Doron was able to discover when he went down to Mexico. Um, the, uh, record was, uh, preserved where I asked for a continuance, I asked for an unspecified time, but I did need enough time to go down to Mexico. That would have given the defense the opportunity to, uh, rebut the intricate information that was in the registration card. And so I would ask, do we want, uh, the, how are we going to look at the failings or the late disclosures of the United States attorney? Was it a tactical advantage or was it for a motivation of justice? At this point, counsel, the, you know, it sounds to me like you're asking for the, for us to punish or to sanction the U.S. attorney. The, the question I think that's before us at this point is whether you were in some way prejudiced and therefore it was an error by the district court, not whether it was an error by the U.S. attorney. Let's just assume that it was a mistake by the U.S. attorney. The question is whether the failure to give you a continuance was an error by the district court. I agree. I agree. But I do also believe that we have to look at the pattern of conduct of this United States attorney in order to come to that appropriate remedy for any kind of Rule 16 violations. Thank you. Thank you very much. We thank counsel for the argument. The last case on the oral argument is the                I will now close the hearing. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.                   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Beistline, Schroeder, Bybee